Filed 7/11/24  P. v. Addleman CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B328467 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No.KA111467) |
| v. | |
| CLAYTON RUBEN ADDLEMAN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert M. Martinez, Judge.  Affirmed.

Jared G. Coleman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill, Thomas C. Hsieh and Melanie Dorian, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Clayton Addleman contends the trial court erred in resentencing him because it did not apply the full resentencing rule and did not properly consider his youth at the time of the crime or his rehabilitative efforts since. We disagree and affirm.

## BACKGROUND

### I. Conviction and Initial Sentence

In 2015, appellant, who was 24 years old, went on a three-day spree during which he committed crimes against multiple victims in several different locations. In 2017, a jury found appellant guilty of all 13 charges resulting from the spree: attempted willful, deliberate, and premeditated murder (Pen. Code, §§ 187, subd. (a), 664)[1]; robbery (§ 211); three counts of burglary (§ 459); grand theft auto (§ 487, subd. (d)(1)); grand theft of personal property (§ 487, subd. (a)); identity theft (§ 530.5, subd. (a)); forgery relating to identity theft (§§ 473, subd. (a), 475, subd. (b)); unlawful possession of a firearm by a felon (§ 29800, subd. (a)(1)); unlawful possession of ammunition (§ 30305, subd. (a)(1)); petty theft (§§ 484, subd. (a), 490.2); and assault with a firearm (§ 245, subd. (a)(2)). The jury also found true several personal use firearm allegations. (§§ 12022.5, subd. (a), 12022.53, subds. (b), (c).) Appellant admitted suffering two prior convictions.

At appellant's original sentencing hearing in 2017, the court vacated two of the three burglary convictions as duplicative. The court then sentenced appellant to an indeterminate term of life for the attempted premeditated murder, plus a consecutive term of 20 years for the firearm enhancement related to that charge. The court rejected appellant's argument that the crime

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

spree was a single course of conduct and imposed a consecutive midterm sentence of four years for the robbery; a consecutive aggregate sentence of one year for the grand theft auto and related firearm enhancement (one-third the midterm plus one-third the firearm enhancement); a consecutive aggregate sentence of one year for the identity theft and related firearm enhancement (same); and six months (time served) for the petty theft. The court imposed and stayed under section 654 a four-year midterm sentence for the burglary; an aggregate one-year sentence for the grand theft of property and related firearm enhancement (one-third the midterm plus one-third the firearm enhancement); an aggregate one-year sentence for the forgery and related firearm enhancement (same); a three-year high term sentence for unlawful possession of a firearm; a three-year high term sentence for unlawful possession of ammunition; and a three-year midterm sentence for assault with a firearm. Appellant's total effective sentence thus consisted of a determinate term of six years, plus the indeterminate term of life plus 20 years. The court also imposed various fines and fees.

## II.    First Appeal

Addleman appealed. A different panel of this court affirmed appellant's convictions but remanded the matter to enable the trial court to decide whether to exercise its then-new discretion to strike the 20-year section 12022.53 firearm enhancement related to the attempted murder conviction. (*People v. Addleman* (Feb. 18, 2020, B285290) [nonpub. opn.].) On remand, the trial court declined to strike the enhancement. Addleman appealed.

## III. Second Appeal

In his second appeal, appellant argued that the court abused its discretion by failing to consider his post-judgment conduct. A different panel of this court rejected this argument and affirmed. (*People v. Addleman* (Oct. 7, 2021, B307460) [nonpub. opn.].) The California Supreme Court granted appellant's petition for review and transferred the matter to the court of appeal "with directions to vacate its decision and reconsider the cause in light of Penal Code section 1170 as amended by Assembly Bill No. 124 (Stats. 2021, ch. 695), Assembly Bill No. 1540 (Stats. 2021, ch. 719), and Senate Bill No. 567 (Stats. 2021, ch. 731)." (*People v. Addleman* (Dec. 22, 2021, S271834).)

On transfer, a different panel of this court reconsidered the matter and concluded that resentencing was required under Assembly Bill No. 124 (AB 124), which amended section 1170 effective January 1, 2022 to make a low-term sentence presumptively appropriate where any of certain specified circumstances was a "contributing factor in the commission of the offense," including where the defendant was a "youth" at the time of the offense. (§ 1170, subd. (b)(6) & (B); Stats. 2021, ch. 695, § 5.3.) Where the presumption applies, the court may impose a higher sentence only if it finds that "aggravating circumstances outweigh the mitigating circumstances [so] that imposition of the lower term would be contrary to the interests of justice." (§ 1170, subd. (b)(6).) For purposes of this provision, a "youth" includes any person who was under the age of 26 at the time of the offense. (See §§ 1016.7 [defining youth as person under 26 at time of offense], 1170, subd. (b)(6)(B) [incorporating § 1016.7's definition of "youth"]; Stats. 2021, ch. 695, §§ 4, 5.) Because

4

appellant was 24 when he committed his offenses, and the record did not clearly indicate that remand would be futile, the court of appeal vacated its previous decision, reversed appellant's sentence, and remanded the matter for "resentencing consistent with the intervening ameliorative changes to sentencing law." (*People v. Addleman* (Apr. 18, 2022, B307460) [nonpub. opn.].)

## IV.   Most Recent Trial Court Proceedings

When the matter returned to the trial court, appellant, through counsel, filed a one-page sentencing memorandum.  He requested that the court "sentence him to the lower term pursuant to AB 124," because his "extensive drug use, homelessness, lack of maturity impulsive tendencies and youthfulness [*sic*] all were contributing factors to his criminal conduct."  Appellant also asserted that he had "made genuine and significant strides towards rehabilitation" while incarcerated. Appellant attached several documents in support of the latter assertion.  They included a piece dated November 2, 2022 in which appellant wrote about witnessing his cellmate's overdose and experiencing his own father's fatal overdose when he was six years old; letters from two organizations recognizing appellant's rehabilitative efforts and offering supportive services upon his release; a certificate documenting appellant's receipt of a scholarship award and a thank-you letter he wrote to the donor; and a letter thanking him for his participation in the Prison Letters 4 Our Struggling Youth program.  Appellant also attached two "laudatory chronos" from prison staff.  One recognized and praised his "hard work and superior work ethic," and the other commended his "considerable growth and maturity," "high levels of positive behavior," and efforts to "improve himself while providing a positive example to his fellow

5

inmates." The People filed an updated probation report dated December 15, 2022.

The trial court heard the matter on December 19, 2022; appellant was present. The court noted at the outset that it was "now required to impose the low term of any determinate sentencing that has a sentencing range of three potential sentences. . . . [u]nless certain factors are presented" and invited counsel to argue the matter. Appellant's counsel pointed to the sentencing memorandum and argued that at the time of the crimes, appellant was living in his vehicle and using drugs, which "indicated a lack of maturity on his part and an impulsive tendencies [*sic*] which are all indicative of his youthfulness." Counsel then highlighted several of the sentencing memorandum attachments, and added that appellant recently devised a project to help educate high school students about the dangers of drugs and criminal life. Counsel concluded by asking the court to sentence appellant to the low term "where legally permissible in this case."

Appellant then personally addressed the court. He spoke about trauma he suffered during his childhood, including his father's "open casket legacy at age six and the drugs like methamphetamine which found its way into my lungs by the age of three." Appellant stated that he "allowed my childhood trauma to define me," and his "best thinking led me from crime to crime with no consideration for the well being of others, only my need to get high and to escape my miserable reality." Appellant stated that receiving a "life sentence opened my eyes," such that he currently "live[d] a life of integrity" and "bountiful sobriety," and used his new insights to "connect with others" and "impact the lives of those around me." Appellant further stated that he

dedicated his efforts to the victims of his crimes, and thanked the court for acknowledging his potential when it initially sentenced him in 2017.

In response, the People asked the court "to not modify the sentence the court previously imposed." They asserted that they "do not believe that the defendant's conduct was due to his youthfulness but due to the conduct that he was engaged in when this particular crime occurred and in the years leading up to it." They pointed to the updated probation report, and the "long history of police contact and . . . defendant's repeated involvement with crimes involving weapons" that "preceded our particular matter here today." They argued that appellant's criminal history and "increased violence which culminated with our current case" justified the midterm sentence in this case. They requested that the court "have these [*sic*] original sentence maintained."

The court began its oral ruling by discussing AB 124 and its presumption in favor of a low term sentence when youth is a factor in the crime. The court then stated that it had "reviewed all the crimes" in the case and concluded that the only crime affected by AB 124 was the robbery, which had a determinate sentencing triad of two, four, or six years.[2] It explained that

---

[2] Appellant was convicted of other crimes punishable with determinate sentencing triads. The court initially imposed consecutive sentences of one-third the midterm for several of those crimes in accordance with section 1170.1. The court also initially stayed many of appellant's sentences—including some of the aforementioned sentences of one-third the midterm— pursuant to section 654. Appellant's opening (and only) brief addresses this issue in a single sentence: "The court was also required to state its reasons on the record for selecting each term

under AB 124, it "would be initially required to consider the low term of two years," "unless the aggravating circumstances are such that they outweigh the mitigating factor of youth." The court stated that when it imposed the four-year midterm in 2017, it "had to take into consideration the defendant's background, his criminal history, factors such as the fact that he was on felony probation on two matters at the time these crimes were committed," and the offense's classification as a violent felony. It continued, "the court has to take into consideration the character of the defendant. He did not have an easy life[;] he had a criminal history which began when he was a juvenile and involved weapons." The court then summarized appellant's prior convictions: an incident involving a knife, an incident involving a "collapsible baton," felony possession of marijuana, "being under the influence of PCP and another weapons charge," unlawful possession of a firearm, and possession of marijuana for sale.

The court then turned its attention to the circumstances of the robbery, which occurred in a residence and "involved great violence and threat of violence," as well as "a high degree of cruelty, viciousness and callousness." The court noted although no firearm enhancement had been alleged, appellant admitted during trial that he had been armed with a firearm. The court continued, "[t]he victim was vulnerable. The house was occupied

_____

and impose sentence even if the sentence is ultimately stayed under section 654." As discussed below, the court appropriately considered all counts. To the extent appellant seeks to challenge any other aspects of the court's application of section 654 in light of recent statutory changes such as Assembly Bill No. 518 (Stats. 2021, ch. 441, § 1), such challenges are forfeited due to his failure to appropriately raise them.

by her and her minor children. The residential robbery occurred at 6:35 in the morning" and was part of "a very brief 48 hours [that] also included the attempted murder of an individual that was deliberated and premeditated." The court added that the jury found that appellant intended to kill the attempted murder victim, and found him guilty of all the other charged crimes. The court stated that it was "required to consider and to balance, whether for the crime of first degree robbery a low term should be imposed of two years rather than the four-year term the court did impose." Ultimately, the court concluded that under "the totality of this case and the circumstances surrounding it, the court finds that the aggravating circumstances outweigh any mitigating circumstances that would justify the imposition of the low term[,] which would be contrary to the interest of justice."

The court then addressed the remaining charges. It found the attempted murder did "not fall within the new changes of the law" because "there is no low term or high term that this court can impose." Instead, "attempted murder is punishable by a life sentence." The court noted that appellant "also received an additional 20 years on the attempted murder" due to the firearm enhancement. The court continued, "The court also imposed a sentence on count 5, first degree burglary and selected the four-year term but that was stayed. That means he will not have to serve that sentence. In count 6, the defendant was charged with auto theft. Since the court intended that count to run consecutive, the court could only take one third of the middle term and the court did so. And that one third of the midterm amounted to eight months and one third of one year for principal arm, so that term added one year." The court addressed the remaining counts in similar fashion, noting that it had imposed

9

the high term on the stayed firearm and ammunition possession counts based on its consideration of the circumstances of the case and appellant's previous conviction for unlawful firearm possession. After addressing all the counts, the court pronounced, "[t]he total term imposed is 26 years followed by life."

The court then stated that it "has viewed and impressed [*sic*] by the defendant's apparent attempts to rehabilitate and improve himself, but that alone isn't enough to substantially change the sentence. That being said, I believe that if he continues with his positive behavior in state prison, he will realize liberty down the road. The law permits the district attorney and the Department of Corrections to petition the court to modify a sentence typically for good behavior."[3] The court further remarked, "It is so tragic that drugs found this young man, not only drugs to use but also drugs to sell. The court in exercising discretion has to consider the defendant but also has to consider the protection of society. His past conduct has demonstrated, for whatever reason, that he posed a significant and substantial danger to society, committed serious crimes and serious methods and choice of weaponry." The court concluded the hearing by telling appellant, "I hope that your journey will continue to be positive, that the Department of Corrections will keep an eye on your progress. I hope that if a petition is filed by

---

[3] Effective January 1, 2024, the law also allows the court to act "on its own motion" to recall a defendant's sentence and resentence him or her "at any time if the applicable sentencing laws at the time of the original sentencing are subsequently changed by new statutory authority or case law." (§ 1172.1, subd. (a)(1).)

the Department of Corrections or the district attorney's office, that a judicial officer handle [*sic*] that petition in a fair and just manner. But the motion to apply Assembly Bill 124 as codified 1170 [*sic*] of the Penal Code is denied. In preparation of the hearing, the court has reviewed the most recent probation report dated today's date. I have reviewed the latest material filed by [counsel] on your behalf and I wish you success in the future."

Appellant timely appealed.

## DISCUSSION

### I.    **Full Resentencing Rule and Oral Pronouncement**

Appellant contends the judgment must be reversed because the court "did not properly conduct a sentencing hearing" by applying the full resentencing rule and orally pronouncing judgment on each count. We review these questions of law de novo. (See *People v. Cromer* (2001) 24 Cal.4th 889, 894.)

The "full resentencing rule" provides that "when part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances.'" (*People v. Buycks* (2018) 5 Cal.5th 857, 893 (*Buycks*).) Unless the remittitur expressly limits the scope of remand or other circumstances such as a negotiated sentence or ex post facto concerns are present (*People v. Walker* (2021) 67 Cal.App.5th 198, 205-206 & fn. 4 (*Walker*)), "the resentencing court may consider 'any pertinent circumstances which have arisen since the prior sentence was imposed.'" (*Buycks*, *supra*, 5 Cal.5th at p. 893.) Indeed, *Walker* held that the "when a trial court corrects one part of a sentence on remand, it is obligated to address the effect of subsequent events that render other parts of that sentence legally incorrect. By correcting one part of the

11

sentence, the trial court is resentencing the defendant and, in so doing, is not only permitted, but also obligated to look at the facts and the law in effect at the time of that resentencing . . . and whether they render a different part of the sentence legally incorrect." (*Walker*, *supra*, 67 Cal.App.5th at pp. 205-206.) "The trial court has a duty never to impose an unauthorized sentence, and a corollary of this duty is to ensure that *all* components of that sentence are authorized by the law and the facts at the time any new sentence is imposed." (*Id.* at p. 206.)

Appellant asserts that the court did not comply with the full resentencing rule because it "merely considered if AB 124's changes to section 1170(B)(3) [*sic*] would apply to appellant's *previous* judgement [*sic*], which had been vacated by this Court" and did not orally impose sentence on each count. The record does not support these assertions.

Whether the full resentencing rule requires or, as the Attorney General argues, merely permits the trial court to reconsider the sentences it previously imposed, the court complied with the rule here. As detailed above, the court expressly stated that it had considered "the latest materials" filed by both sides as well as the circumstances of the crimes and the background and "character of the defendant," all of which are proper considerations under California Rule of Court 4.423 and reflect the court's reevaluation of its previous sentencing choices. In any event, we presume the court considered the relevant factors "unless the record affirmatively reflects otherwise" (Cal. Rules of Court, rule 4.409), and the record here does not meet that bar.

The court spent the most time during the resentencing hearing addressing the most relevant conviction, the robbery

conviction, and explaining its reasoning for reimposing the initial midterm sentence on that count. However, as appellant recognizes, the court also addressed all of the other counts, stating the sentences it previously imposed and why it believed those sentences remained proper. Appellant has not pointed to any authority holding that the court is required to resentence from a completely blank slate, with no reference to the previous sentence. The court cannot implicitly incorporate its original reasons by failing to state any at the resentencing (see *People v. Thornton* (1985) 167 Cal.App.3d 72, 74), but here the court made overarching comments demonstrating that it considered the relevant factors and appreciated the scope of its discretion. We are not persuaded otherwise by its errant remark that "the motion to apply Assembly Bill 124 as codified 1170 [*sic*] of the Penal Code is denied," which was contrary to both the substance of the hearing and its recognition that "[t]he matter is here on a remittitur from the court of appeal." Regardless of what it called the hearing, the court explicitly stated what the sentence on each count would be, and that the "total term imposed is 26 years followed by life." We accordingly conclude the court fulfilled its obligations to orally impose sentence on each count (*People v. Zackery* (2007) 147 Cal.App.4th 380, 387-388), and provide evidence-supported reasons for its discretionary choices (*People v. Scott* (1994) 9 Cal.4th 331, 349).

## II.    Consideration of Youth and Rehabilitative Efforts

Appellant contends the trial court "based its decision not to change any sentence based on his past crime alone" and did not "properly consider the relevant facts related to how appellant's youth had influenced his crime, and how appellant's improvement in character and demonstrated maturity at the

13

time of the sentencing reduced the need for further incarceration." He also asserts that the court failed to consider new legislative findings about the purpose of incarceration that took effect after the hearing. We review the court's sentencing decision for abuse of discretion. (*People v. Hicks* (2017) 17 Cal.App.5th 496, 512.) We find none here.

As explained in the previous appellate opinion in this matter, AB 124 amended section 1170 to provide that the court "shall order imposition of the lower term sentence" if certain enumerated factors, including the defendant's youthful age at the time the offense was committed, were "a contributing factor in the commission of the offense," "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice." (§ 1170, subd. (b)(6)(B).) The lower term presumption also applies if the defendant "experienced psychological, physical, or childhood trauma" that was a contributing factor in the commission of the offense. (§ 1170, subd. (b)(6)(A).)[4]

---

[4] Appellant also mentions that section 1170, subdivision (b)(2) now provides that the court may impose a high term sentence "only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." We note that the court imposed and stayed the high term on appellant's convictions for unlawful firearm and ammunition possession based on "the circumstances of his case" and his previous similar convictions. Appellant makes no substantive argument that these sentences were improper or unauthorized.

Appellant's counsel briefed and orally argued that appellant's youth, lack of maturity, and impulsive tendencies contributed to the commission of his crimes. Appellant also directly addressed the court, discussing events from his childhood and their impact on his life.  The People also argued about appellant's youth.  The issue thus was squarely before the court, and the court unambiguously acknowledged as much. It stated that the "factor of youth" was the "category that applies here," and recognized that "the court is required to choose the low term unless the court finds aggravating circumstances outweigh the mitigating circumstances, that [*sic*] imposition of a lower term would be contrary to the interest of justice."  The court then discussed various factors it considered, notably including "the character of the defendant" and that "he did not have an easy life."  The court also addressed the cruel, vicious, and callous nature of the robbery and attempted murder in particular, noting the jury's finding that the latter was willful, deliberate, and premeditated.  Balancing these factors, it found that the aggravating circumstances outweighed "any mitigating circumstance that would justify the imposition of the low term."  This conclusion was not so irrational or arbitrary that no reasonable person could agree with it and therefore was not an abuse of discretion.  (See *People v. Carmony* (2004) 33 Cal.4th 367, 377.)

The "hallmark features" of youth include "immaturity, impetuosity, and failure to appreciate risks and consequences." (*Miller v. Alabama* (2012) 567 U.S. 460, 477.)  Youth also "'often lack the experience, perspective, and judgment to recognize and avoid choices that could be detrimental to them,'" and "'are more vulnerable or susceptible to . . . outside pressures' than adults."

15

(*J.D.B. v. North Carolina* (2011) 564 U.S. 261, 272.) Even if the court concluded that these factors contributed to appellant's solo crime spree generally or the robbery specifically (see § 1170, subd. (b)(6)), the court did not abuse its discretion in concluding they were outweighed by the various aggravating factors present in this case. "Sentencing courts have wide discretion in weighing aggravating and mitigating factors" (*People v. Lai* (2006) 138 Cal.App.4th 1227, 1258), and we cannot "reweigh valid factors bearing on the decision below." (*People v. Scott*, *supra*, 9 Cal.4th at p. 355.) Appellant asks us to do just that, asserting that the court should have given "great weight" to his youth and listing various facts he finds particularly pertinent.

Appellant similarly contends the court failed to adequately consider his rehabilitative efforts and instead "erroneously implied that the facts of appellant's rehabilitation would only be considered if the District Attorney or Department of Corrections petitioned for resentencing." We disagree. The court stated that it was "impressed by the defendant's apparent attempts to rehabilitate and improve himself," clearly evincing its consideration of those efforts. As previously noted, the court also said it considered the materials filed on appellant's behalf, all of which pertained to his rehabilitative efforts. It further stated, "that alone isn't enough to substantially change the sentence," indicating not only its consideration of appellant's efforts but also its balancing of those efforts against other relevant factors. Appellant suggests that the court should have mentioned and considered "factors in mitigation other than [his] youth"; these comments indicate it did. They do not indicate an abuse of discretion.

Appellant also argues that the court abused its discretion by failing to consider a recent amendment to section 1170, subdivision (a)(1) that took effect on January 1, 2024.  (See Stats 2023, ch. 50, § 2.5.)  Section 1170, subdivision (a)(1) previously provided, "The Legislature finds and declares that the purpose of sentencing is public safety achieved through punishment, rehabilitation, and restorative justice.  When a sentence includes incarceration, this purpose is best served by terms that are proportionate to the seriousness of the offense with provision for uniformity in the sentences of offenders committing the same offense under similar circumstances."  (Former § 1170, subd. (a)(1).)  It now provides, "The Legislature finds and declares that the purpose of sentencing is public safety achieved through punishment, rehabilitation, and restorative justice.  When a sentence includes incarceration, the deprivation of liberty satisfies the punishment purpose of sentencing.  The purpose of incarceration is rehabilitation and successful community reintegration achieved through education, treatment, and active participation in rehabilitative and restorative justice programs.  This purpose is best served by terms that are proportionate to the seriousness of the offense with provision for uniformity in the sentences of people incarcerated for committing the same offense under similar circumstances."  (§ 1170, subd. (a)(1).)

Appellant asserts that the court should have considered this "newly stated purpose" at his December 19, 2022 resentencing hearing, because his "commitment to change" demonstrated a reduced need for further incarceration.  It would have been factually impossible for the trial court to consider this purpose, which had not yet been enacted at the time of appellant's resentencing.  Even if we assume the amendment

17

retroactively applies to appellant's resentencing—respondent argues that it does not—the court would not have been required to expressly reference it to properly exercise its discretion. (See Cal. Rules of Court, rule 4.409.) The court considered appellant's significant positive strides as one of many factors relevant to its sentencing decision, and we do not reweigh its careful balancing here.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COLLINS, J.

We concur:

CURREY, P. J.

ZUKIN, J.